RECEIVED
AUG 2 2 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH CLYDE POTIER, ET AL. | CIVIL ACTION NO. 13-0789 |
| VERSUS | JUDGE DOHERTY |
| JBS LIBERTY SECURITIES, INC., ET AL. | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Pending before the Court is the "Motion to Dismiss for Failure to State Claim Upon Which Relief Can Be Granted, and, Alternatively, for Summary Judgment," [Doc. 44] filed by defendant Metropolitan Life Insurance Company ("MetLife Insurance"), wherein defendant seeks dismissal of all claims brought against it by the plaintiffs under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, under Rule 56. The motion is opposed by the plaintiffs Joseph Clyde and Glenda Potier ("plaintiffs") [Doc. 58], and MetLife has filed a "Motion for Leave to File Memorandum in Opposition to Plaintiffs' Statement of Material Facts and Certificate Pursuant to LR 7.4.1" [Doc. 62], which is herein GRANTED.

For the following reasons, the motion to dismiss under Rule 1(b)(6) is GRANTED, and the alternative grounds for dismissal, that is, the motion for summary judgment under Rule 56, is also GRANTED out of an abundance of caution. Finally, plaintiffs' request for a continuance to conduct discovery in an attempt to defeat the motion for summary judgment is DENIED.

I.  **Factual and Procedural History**

The crux of the instant lawsuit is plaintiffs' allegation that Roger Dale Lanclos – alleged to be a securities "broker" – and certain brokerage firms, including MetLife Insurance – are liable to

the plaintiffs for losses suffered as a result of certain securities transactions. Notwithstanding this Court's succinct summary of the plaintiffs' allegations, the plaintiffs' Second Amended Complaint is inartfully drafted and vaguely worded, and this Court has had difficulty determining which specific claims are pled against which specific defendant, which has made adjudication of the instant motion problematic. Nevertheless, the Court has parsed the arguments of the parties as best it can and will address the motion, as follows.

The plaintiffs' claims against MetLife Insurance primarily focus on the actions of Mr. Lanclos, who was employed by Metlife Insurance as a financial services representative from November 1986 to May 2001.[1] Jurisdiction of the entire action is alleged under 28 U.S.C. §1331 (federal question), the provisions of the Securities Act of 1933, 15 U.S.C. §77a, *et seq.*, and the provisions of the Securities Exchange Act of 1934, 15 U.S.C. §78a.

The following facts appear to be undisputed:

- Between November of 1986 and May of 2001, Roger Dale Lanclos ("Lanclos") was an employee of Metropolitan Life Insurance Company ("MetLife").

- Lanclos was licensed by the National Association of Securities Dealers ("NASD"), now "FINRA," between November of 1986 and May of 2001.

- In May of 2001, Lanclos' relationship with MetLife Insurance ended.

- MetLife Insurance issued two annuity contracts to Joseph Potier (Annuity Contract No. 060362185VM and Annuity Contract 060362198VM) and one to Glenda and Joseph Potier jointly (Annuity Contract No. 073307893).

---

[1] During that time period, Mr. Lanclos was also associated with a separate MetLife entity – MetLife Securities – as a securities broker. This Court has already dismissed all claims against MetLife Securities in the ruling adjudicating MetLife Securities' unopposed Motion for Summary Judgment. *See* Doc. 34.

Other entities named as defendants in the instant lawsuit are JBS Liberty Securities, Inc., American General Securities, Inc., and JBS Investment Group, LLC.

2

- The MetLife Insurance annuity contracts issued to Joseph Potier individually were cash surrendered on May 1, 1989.

- The MetLife Insurance annuity contract jointly owned by the plaintiffs was fully surrendered for its cash value in September of 2001 and the funds transferred to American General Annuity Insurance Company in connection with an Internal Revenue Code Section 1035(a) exchange.

- MetLife Insurance is not related to the following companies: American General, Allianz Life Insurance Company of North America, Hartford Life Investment Products Services, American Skandia Life Assurance Company, Aviva Life and Annuity Company of New York, Prudential Annuities, and Liberty Life Insurance Company.

In the instant motion, MetLife seeks dismissal of all claims against it under Fed.Riv.Civ.P. 12(b)(6) on grounds the plaintiffs fail to state a claim against MetLife Insurance, because none of the "trades" allegedly executed by Mr. Lanclos on their behalf were products of MetLife Insurance.[2]

MetLife Insurance further seeks summary dismissal of all claims alleged by the plaintiffs against it under Fed.R.Civ.P. 56 on grounds the plaintiffs' claims are time-barred under both federal and state law, all as more fully set forth below.

## II. Law and Analysis

### 1. Motion to Dismiss

MetLife Insurance seeks dismissal of all of the plaintiff's claims against it on grounds none of the "trades" allegedly executed by Mr. Lanclos on their behalf were products of MetLife Insurance. In so arguing, MetLife Insurance emphasizes that while Mr. Lanclos was an employee of MetLife Insurance during the time period at issue, he was not a broker, but rather, was a financial

---

[2] Specifically, MetLife argues plaintiffs have listed seventeen annuities, none of which were issued by a MetLife entity, as "trades" which are the subject of the plaintiffs' claims for damages. MetLife also argues plaintiffs allege all of the actions that caused them damage were committed by Mr. Lanclos, an independent broker, who was not employed by MetLife.

3

services representative.

In response, the plaintiffs acknowledge that while they admittedly specifically identify what they refer to as 18 trades executed by Mr. Lanclos in their Second Amended Complaint – none of which involve MetLife products – they plead additional trading activity which cannot be more specifically pled because of the nature of Mr. Lanclos's conduct, as follows:

> s.    Additional trading effecting the above listed accounts cannot be more specifically pleaded at this time because Defendant, **ROGER DALE LANCLOS**, failed to keep complete records, failed to provide Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, with complete records, and failed to disclose certain trades to Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**; and
>
> t.    Additional trading which cannot be more specifically pleaded at this time because Defendant, **ROGER DALE LANCLOS**, failed to keep complete records, failed to provide Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, with complete records, and failed to disclose certain trades to Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**.[3]

The plaintiffs argue Mr. Lanclos has prevented the plaintiffs from specifically listing every trade that occurred between 1986 and 2010 because of the conduct of Mr. Lanclos, including: failing to disclose all trading activity; altering and destroying investment records; and providing the plaintiffs with inaccurate statements. The foregoing allegations are contained within the plaintiff's Amended Complaint, to wit:

18.

> Defendant, **ROGER DALE LANCLOS**, performed trades and engaged in investment practices which were not authorized by Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, and which have not been specifically identified herein because Defendant, **ROGER DALE LANCLOS**, failed to disclose the unauthorized trading and/or investment practices to Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**.

---

[3] *See* Second Amended and Restated Complaint and Jury Demand, Doc. 14, at ¶15(s) & t.

25.

Based upon information and belief, at times pertinent herein, Defendant, **ROGER DALE LANCLOS** signed the names of Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, on various financial documents and contracts without their consent or knowledge and caused monthly, quarterly, and annual financial reports and other financial documents pertaining to the investments of Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, to be delivered to his office in order to alter, change, or otherwise prevent Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, from becoming aware of his investment activities, excessive trading, unsuitable trading, and material misrepresentations.

26.

Based upon information and belief, at times pertinent herein, Defendant, **ROGER DALE LANCLOS** gained access to the home and workplace of Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, without their consent, knowledge, or under false pretenses to cause monthly, quarterly, and annual financial reports and other financial documents pertaining to the investments of Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, to be destroyed altered, or otherwise changed, in order to prevent Plaintiffs, **JOSEPH CLYDE POTIER** and **GLENDA POTIER**, from becoming aware of his investment activities, excessive trading, unsuitable trading, and material misrepresentations.[4]

Presumably, the plaintiffs argue their claims should not be dismissed because there are additional trades that are unknown to them at this time that could, perhaps, include MetLife Insurance products. In reply, MetLife Insurance argues the plaintiffs allege claims against it as a "broker" and goes on to explain while Mr. Lanclos was a broker for *MetLife Securities* – a business entity completely separate from MetLife Insurance – Mr. Lanclos was employed as a "financial services representative" -- not a broker – for MetLife Insurance. MetLife Insurance further contends Mr. Lanclos did not engage in trading securities or in any "impermissible trading activity" for MetLife Insurance, and "any and all claims relating to Joseph Potier's brokerage account were

---

[4] *Id.* at ¶¶ 18, 25 & 26.

dismissed with prejudice by this Court on April 4, 2014." Finally, MetLife Insurance argues Mr. Lanclos's relationship with both MetLife Insurance and MetLife Securities ended in May 2001.

When reviewing a motion to dismiss, this Court's "analysis generally should focus exclusively on what appears in the complaint and its proper attachments." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) *cert. denied*, 133 S.Ct. 32, 183 L.Ed. 2d 678 (U.S. 2012) (citing *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006)). The Court reviews the motion to dismiss under Rule 12(b)(6), "*accepting all* well-pleaded *facts as true and viewing those facts in the light most favorable to the plaintiff*." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted)(emphasis added). However, "[f]actual allegations must be enough to raise a right to relief *above the speculative level*." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)(emphasis added). "To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true*, to 'state a claim to relief that is *plausible on its face*.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955)(emphasis added). Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are *"well pleaded"* rather than to resolve the disputes or possible arguments suggested by, or, surrounding those facts. The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting

6

r

*Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)(emphasis added). Stated differently, the jurisprudence instructs that if a plaintiff fails to allege, in his/her pleadings, facts sufficient to "*nudge [his or her] claims across the line from conceivable to plausible*, [his or her] complaint must be dismissed." *Mitchell v. Johnson*, 07-40996, 2008 WL 3244283 (5th Cir. Aug. 8, 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955)(emphasis added). Again, the jurisprudence instructs that determining whether this standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937.

In the instant case, this Court must determine whether the plaintiffs have sufficiently alleged claims of improper trading activity on the part of MetLife Insurance, presumably through the activities of Mr. Lanclos. With respect to MetLife Insurance's argument that the plaintiffs have already settled their claims against MetLife Insurance, this Court finds such argument to be without merit. MetLife Insurance attempts to argue all claims alleged by the plaintiffs "relat[ing]" to a brokerage account . . . he had with" MetLife were the subject of a Settlement Agreement entered into by the plaintiffs in 2003. MetLife Insurance goes on to quote a portion of the settlement language, as follows, wherein MetLife Insurance argue plaintiffs:

> irrevocably and unconditionally releases, acquits, and forever discharges Releasees of and from any and all claims, liens, lawsuits, demands, obligations, actions, causes of action, counts, rights, damages, liabilities, losses, attorneys fees, costs, fees, or expenses, of any nature whatsoever, and any compensation whatsoever, known or unknown, ascertained or not ascertained, suspected or unsuspected, foreseen or unforeseen, that have existed, now exist or may exist in the future **arising out of or relating in any way to Account No. 5ML-168520** or to any alleged statements made, actions taken or admissions made by MetLife, its agents, representatives or employees, and/or the Releasees relating in any way to up to and including the date of this Confidential Settlement Agreement.[5]

---

[5] *See* Reply Brief of MetLife Insurance, Doc. 62, at p.5.

7

The Court has been provided with a copy of the confidential Settlement Agreement, which has been filed into the record under seal. However, the express language of the Settlement Agreement, which has been quoted in the unsealed reply brief of MetLife Insurance, shows the parties to the settlement agreement are the plaintiffs and <u>MetLife Securities</u> – not MetLife Insurance – and further shows the only claims that are the subject of the settlement agreement are those that "aris[e] out of or relat[e] in any way to <u>Account No. 5ML-168520</u>" (emphasis added).

It is unclear to the Court to what "Account No. 5ML-168520" refers, as that account is not referenced in the Settlement Agreement itself, nor is it referenced in the plaintiffs' complaint, the motion to dismiss, or any of the other briefing, as far as this Court can determine. Furthermore, the reference to "Account No. 5ML-168520" is perplexing, given that in its motion, MetLife Insurance seeks dismissal of the plaintiffs' claims on grounds none of the plaintiffs' claims references trades involving MetLife Insurance products, not that the claims involve securities transactions that are the subject of a settlement agreement. Thus, the relationship between "Account No. 5ML-168520" and the specific trades referenced in the plaintiffs' Second Amended Complaint – if any – is unclear to the Court. What is clear is that the plaintiffs argue they cannot plead certain trades with specificity because of the conduct and actions of Mr. Lanclos. The plaintiffs allege the "additional trading" they cannot plead with specificity occurred between 1986 and 2010, during the time period Mr. Lanclos was employed by MetLife Insurance as a financial services representative. Thus, to the extent the plaintiffs argue illegal trading activity that in no way relates to "Account No. 5ML-168520," the Settlement Agreement does not appear to foreclose such claims.

Furthermore, MetLife Insurance overreaches when it argues that "any and all of Plaintiffs' claims relating to Joseph Potier's brokerage account were dismissed with prejudice by this Court on

8

April 4, 2014." What this Court dismissed were all claims against *MetLife Securities*, and only because the plaintiffs did not oppose the well-argued motion for summary judgment filed by MetLife Securities, not because this Court performed an exhaustive merits analysis of the legal issues relating to the brokerage accounts of the plaintiffs *vis-a-vis* MetLife Securities.

Notwithstanding the foregoing, however, this Court cannot ignore the fact that, while the plaintiffs allege "additional trading activity" that cannot be pled with specificity, none of that trading activity is alleged against MetLife Insurance. Under the appropriate standard, to survive the instant motion, the plaintiffs' Second Amended Complaint must contain *sufficient* factual matter . . . to 'state a claim to relief that is *plausible on its face*.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Pursuant to the 12(b)(6) inquiry, this Court must address the *sufficiency* of the facts plead, and must look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for *more than a sheer possibility* that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)(emphasis added). Stated differently, the jurisprudence instructs that if a plaintiff fails to allege, in his/her pleadings, facts sufficient to "*nudge [his or her] claims across the line from conceivable to plausible*, [his or her] complaint must be dismissed."

Here, the plaintiffs admittedly allege improper trading activities with respect to 17 or 18 different securities products, none of which are products of MetLife Insurance. While the plaintiffs go on to argue that additional improper trades existed but cannot be identified because of the improper conduct of Mr. Lanclos, the plaintiffs allege no facts showing the as-yet unidentified

improper trades involved products of MetLife <u>Insurance</u>. Indeed, there are no allegations tending to show that, after 2001, when the last of the identified MetLife annuity contracts were surrendered for their cash value, there were any MetLife Insurance products that were improperly traded. Thus, in the entirety of the complaint, the plaintiffs have identified no MetLife product that Mr. Lanclos allegedly improperly traded. As will be discussed below, MetLife has identified three MetLife products – all annuities – that were purchased for the plaintiffs, however, these products were surrendered for their cash value in 1989 and 2001 – again, as will be discussed below – and any claims with result to these products are not timely, again, to be discussed below. No additional facts are sufficiently alleged against MetLife <u>Insurance</u> to show more probably than not that MetLife <u>Insurance</u> is liable to the plaintiffs under the theories alleged by the plaintiffs in their complaint.

Thus, the plaintiffs have not sustained their burden to show *more than a sheer possibility* that MetLife <u>Insurance</u> acted unlawfully. For this reason, the plaintiffs have not met their burden with respect to their claims against MetLife Insurance, and their claims against MetLife Insurance must be DENIED AND DISMISSED WITH PREJUDICE under Rule 12(b)(6).

    1.    **Motion for Summary Judgment**

Although the instant motion can and should be dismissed under Rule 12(b)(6), out of an abundance of caution, this Court will also address the alternative grounds for dismissal argued by MetLife Insurance. MetLife alternatively seeks summary dismissal of the plaintiffs' claims on grounds they are time-barred under both state and federal law, and because the Court agrees summary dismissal of the plaintiffs' claims would have been proper, the Court will address

MetLife's arguments.[6]

### a. Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

---

[6] Although a review of the plaintiffs' Second Amended Complaint appears to allege violations of federal law only, the motion to dismiss argues the plaintiffs' claims are time-barred to the extent they assert claims under state law. To the extent the plaintiffs' claims could be interpreted as state law claims, the Court addresses MetLife's motion as follows.

11

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Id.* at 888-89 (1990)(internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### b. To the extent the plaintiffs are claiming damages relating to annuities, they are time-barred under La. Rev. Stat. §9:5606

MetLife Insurance argues to the extent the plaintiffs are claiming damages relating to annuities, such claims are subject to the peremptive periods set forth in La. Rev. Stat. §9:5606.

The briefs of both parties become murky at this juncture. The plaintiffs do not appear to be alleging state law claims against MetLife Insurance. However, to the extent state law would govern plaintiffs' claims against MetLife Insurance, this Court notes La. Rev. Stat. §9:5606(A) states:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue <u>within one year from the date of the alleged act</u>, omission, or neglect, <u>or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.</u>

La. Rev. Stat. §9:5606(A) (emphasis added).

La. Rev. Stat. 22:6(17) defines an "annuity" as follows:

> (17) Annuity. A contract sold by insurance companies that pays an income benefit for the life of a person, for the lives of two or more persons, or for a specified period of time, or a contract that may provide for a series of payments to be made or received at regular intervals at the direction of the contract holder.

13

In *Klein v. American Life & Cas. Co.*, 858 So.2d 527, 531 (LA. App. 1st Cir. 2003), the court recognized annuities are a form of insurance, and claims arising from "an engagement to provide insurance services" fall within the purview of La. Rev. Stat. §9:5606.

Considering the foregoing, to the extent the plaintiffs' claims against MetLife Insurance relate to annuities, the claims are subject to the delays set forth within La. Rev. Stat. §9:5606(A), that is, the plaintiff's claims must have been filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect was discovered or should have been discovered, however in no event can the action be filed more than three years after the date of the alleged act, omission, or neglect.[7]

The plaintiffs identify only one limitations period in their opposition brief – a five-year limitations period – without citing this Court to any authority for such a limitations period. This Court was unable to find any statutory or jurisprudential rule for a five-year limitations period with respect to an annuity contract, therefore, this Court concludes the limitations period as set forth in §9:5606(A) governs any state law claim relating to annuities.

Once the appropriate limitations period has been determined, the Court must determine when the limitations period began to run. The crux of the plaintiffs' allegations is unlawful churning of the plaintiffs' investment accounts. The Fifth Circuit has stated that "[c]hurning occurs when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of his client's interests." *Miley v. Oppenheimer & Co., Inc.* 637 F.2d

---

[7] With the 1999 amendments to the Louisiana revised statutes, both the one- and three-year limitations periods contained within Section 9:5606(A) are peremptive rather than prescriptive, meaning that if the plaintiff fails to file his or her action within that peremptive period, the action is extinguished. *See, e.g., Huffman v. Goodman*, 784 So.2d 718, 724 (La. App. 2nd Cir. 2001).

14

318, 324 (5th Cir. 1981), *rev'd on other grounds, citing McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 890 n.1 (5th Cir. 1979); *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 820 (9th Cir. 1980). The Fifth Circuit has noted the statute of limitations – whatever it may be – does not begin to run until "the aggrieved party has either actual knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 528 (5th Cir. 1987), *citing First Federal Savings & Loan Association of Miami v. Mortgage Corporation*, 650 F.2d 1376, 1378 (5th Cir.1981). The Fifth Circuit has explained a "churning cause of action may be particularly difficult to detect if the customer is an unsophisticated investor[;] because churning is conduct which is not common to the experience of the ordinary individual, it is consequently not easily recognizable to unsophisticated investors." *Romano*, 845 F.2d at 528, *citing Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 172 (10th Cir.1974).

> In *Romano*, the Fifth Circuit stated:
>
> Because of the character of the offense, churning is not limited to a single transaction. As we have stated before: Churning is a unified offense: there is no single transaction, or limited, identifiable group of trades, which can be said to constitute churning. Rather, a finding of churning, by the very nature of the offense, can only be based on a hindsight analysis of the entire history of a broker's management of an account and of his pattern of trading that portfolio, in comparison to the needs and desires of an investor.

*Id.* at 528, *citing Miley v. Oppenheimer & Company*, 637 F.2d 318, 327 (5th Cir.1981).

MetLife Insurance takes the position that all of the plaintiffs' claims are time-barred under Section §9:5606(A), as all of the claims against MetLife Insurance relate to annuities and all of the annuities were surrendered for their cash value in either 1989 or 2001. On the other hand, the plaintiffs argue Mr. Lanclos acted as a "brokerage agent" until at least December 2010, and their

15

claims were filed within the five-year time period after December 2010.

The plaintiffs' argument is not persuasive. As previously explained, the applicable time period is one year from the date the alleged act, omission, or neglect – the alleged "churning" – was discovered or should have been discovered, but no later than three years after the last date of the alleged churning. MetLife Insurance acknowledges issuing Multifunded Annuity Contract No. 073307893 AB to Glenda and Joseph Potier, with an effective date of October 28, 1998. It appears this annuity contract was surrendered for its cash value of $75,459.70 in September 2001 as part of an IRS 1035(a) exchange, and the funds were transferred to American General Annuity, while Mr. Lanclos was still employed by MetLife Insurance. Although it is not clear when the Potiers learned of the alleged "churning" with respect to this particular annuity contract, there can be no doubt that any actual churning with respect to this annuity contract – if such churning did occur -- ceased when the annuity contract was surrendered for its cash value in 2001. Thus, any and all claims related to this annuity contract must have been brought within three years from the last date that actual churning could have taken place (that is, September 2001), which would have been sometime in September 2004. Because the instant lawsuit was brought in 2013, the claims of the plaintiffs relating to Multifunded Annuity Contract No. 073307893 AB are clearly time-barred. The two previously-issued annuity contracts – which were surrendered for their cash values in 1989 – are time-barred for the same reason.

For this reason, plaintiffs' claims against MetLife Insurance with respect to all of the annuity contracts that were properties of MetLife Insurance are time-barred under the provisions of La. Rev. Stat. §9:5606(A), and any claims against MetLife in connection with those annuities must be

DENIED AND DISMISSED WITH PREJUDICE as perempted.[8]

### c. Plaintiffs' claims for state law breach of contract and/or tort are prescribed

MetLife argues that in addition to being perempted, the plaintiffs' claims seeking damages for breach of contract and/or tort in connection with the annuities issued to Joseph Potier in 1987 are prescribed. The Court agrees.

Louisiana has a ten-year prescriptive period for contract claims, La. Civ. Code art. 3499,[9] and a one-year prescriptive period for torts. La. Civ. Code art. 3492.[10]

In the instant case, the annuities issued in 1987 were surrendered for their cash value in 1989. Consequently, any claims associated with those annuities – sounding in contract or tort – prescribed before the instant lawsuit was filed in 2013 and must be DISMISSED.

---

[8] Although MetLife singles out Multifunded Annuity Contract No. 073307893 AB in this argument, presumably the two annuities issued in 1987 – No. 060362185VM (issued August 27, 1987) and No. 060362198VM (issued August 27, 1987) – are time-barred for the same reason. Both fo the foregoing annuities were surrendered for their case value on May 1, 1989.

[9] Article 3499 of the Louisiana Civil Code states:

> Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.

La. Civ. Code art. 3499 (West 2014). Contractual actions are considered "personal actions" under Louisiana law. See, e.g., Touro Infirmary v. American Maritime Officer, 34 o.3d 878, 880 (La. App. 4h Cir. 2010).

[10] Article 3492 of the Louisiana Civil Code states:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.

La. Civ. Code art. 3492 (West 2014).

### d. Plaintiffs' claims under the Securities Acts of 1933 and 1934 are prescribed

Noting, again, the vagueness with which the plaintiffs' claims have been pled, the plaintiffs appear to assert the following "claims" under the "federal securities law:" (1) "financial loss, loss of potential earnings, loss of future earnings, loss of investment principal, loss of return, and other financial losses" as a result of the investment advice of Mr. Lanclos; (2) the purchase of securities that were "unsuitable" to the plaintiffs' needs, in violation of the Securities Exchange Act of 1934, 15 U.S.C. §78a, *et seq.* (apparently alleged against Mr. Lanclos, although it is unclear); (3) "churning" in violation of the Securities Exchange Act of 1934, 15 U.S.C. §78a, *et seq.* (again, apparently alleged against Mr. Lanclos); and (4) Mr. Lanclos's misrepresentation and/or failure to disclose essential material facts of his investment recommendations, including the suitability of the securities for the financial goals, investment objective, and risk tolerance of the plaintiffs, all in violation of the Securities Act of 1933.

Additionally, the plaintiffs allege a "failure to supervise" claim – somewhat vaguely against the "brokerage firms" – without specifically identifying *which* brokerage firms, for failing to supervise the actions of Mr. Lanclos, in violation of 15 U.S.C. §7t(a), as well as a claim for vicarious liability and/or *respondeat superior* against the "brokerage firms" as the employers and/or principals of Mr. Lanclos, on grounds the "brokerage firms" – again, without specifying which brokerage firms – are responsible for the torts of Mr. Lanclos.

To the extent the foregoing claims – vaguely pled as they are – arise under federal law, they are subject to the two-year statute of limitations or five-year statute of repose as set forth in 28 U.S.C. §1658, which states:

**§ 1658. Time limitations on the commencement of civil actions arising under Acts of Congress**

(a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

(b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of–

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation.

28 U.S.C. §1658.

While it is clear the plaintiffs have alleged Mr. Lanclos "acted as brokerage agent until at least December of 2010," the annuities associated with MetLife Insurance were surrendered for their cash value in 1989 and 2001. Thus, regardless of when the plaintiffs might have *discovered* the alleged actions of Mr. Lanclos, the outside deadline for the filing of claims under the federal securities regulations is five years after the actual violation occurred. Given that the instant lawsuit was filed in 2013, it is clear the federal claims relating to the actual annuities associated with MetLife Insurance Company are time-barred. Considering the foregoing, to the extent the plaintiffs have alleged claims against either MetLife Insurance and/or Mr. Lanclos as a representative of MetLife Insurance, such claims are timed barred under 28 U.S.C. §1658.

    e.    **Plaintiffs' request for continuance**

The plaintiffs request a "continuance" in order to conduct discovery to "analyze the entire history of Lanclos' accounting management trading patterns" in an attempt to defeat the instant

motion.

First, this Court notes the matter is not set for trial, so a "continuance" is not necessary, as a discovery deadline has not been set. Second, MetLife Insurance has identified the MetLife products at issue and has also identified the dates on which those products were surrendered for their cash value. Thus, the evidence that has been adduced in this matter shows the MetLife products that were purchased for the plaintiffs were surrendered many years ago. There is no additional evidence showing the plaintiffs purchased MetLife products, and it is the plaintiffs who would be in the best position to have that information. If, after discovery is conducted in this matter, it comes to light that additional MetLife products were purchased, MetLife can be brought back into the lawsuit. However, at this time, the plaintiffs have brought forth no evidence whatsoever that additional MetLife Insurance products were involved, or that MetLife Insurance acted unlawfully, and under the applicable standard, this Court must grant the instant motion. Consequently, the request for a "continuance" is DENIED.

### III. Conclusion

For the foregoing reasons, the "Motion to Dismiss for Failure to State Claim Upon Which Relief Can Be Granted, and, Alternatively, for Summary Judgment" [Doc. 44] filed by MetLife Insurance is GRANTED, and the claims of the plaintiffs against MetLife Insurance are DENIED AND DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 22 day of August, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE