UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOSEPH CLYDE POTIER and             CIVIL ACTION NO. 6:13-cv-00789
GLENDA POTIER

VERSUS                              JUDGE DOHERTY

JBS LIBERTY SECURITIES, INC.,       MAGISTRATE JUDGE HANNA
ET AL.

## REPORT  AND  RECOMMENDATION

Currently pending are alternative motions to compel arbitration or to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which were filed by defendant American General Securities, Inc. (Rec. Doc. 73).  The motions are opposed.  The motions were referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  (Rec. Doc. 74). Oral argument was held on September 23, 2014.  For the following reasons, the undersigned finds that the plaintiffs' claims against American General are time-barred, recommends that the Rule 12(b)(6) motion be GRANTED, recommends that the plaintiffs' claims against American General be dismissed, and recommends that consideration of the plaintiffs' alternative motion to compel arbitration be pretermitted.

## FACTUAL  BACKGROUND

The plaintiffs allege that, from June 2001 to December 2004, defendant Roger Dale Lanclos was a broker and agent for the brokerage firm American General Securities, Inc.  (Rec. Doc. 14 at 5).  They further allege that, while Lanclos was employed by American General, he invested the plaintiffs' money in and managed financial accounts for the benefit of the plaintiffs by purchasing and selling various securities through American General.  More specifically, the plaintiffs allege that Lanclos purchased approximately five American General annuities for them, all of which were sold or surrendered on or about July 21, 2004.  (Rec. Doc. 14 at 7).  They also allege that, while he was employed with American General, Lanclos purchased an annuity through Allianz Life Insurance Company of North America on November 15, 2005 and sold or surrendered it on August 19, 2008 after he was no longer affiliated with American General.  (Rec. Doc. 14 at 7).  The number of annuities that Lanclos purchased for the plaintiffs is approximate because he allegedly failed to keep complete records, failed to provide the plaintiffs with complete records, and failed to disclose certain trades to the plaintiffs.  (Rec. Doc. 14 at 9).  The plaintiffs allege that Lanclos engaged in a continuous process of purchasing and selling the same or similar annuity funds; that the annuities were not suitable for the plaintiffs' financial goals, risk tolerance, and investment objectives; and that the annuities were

-2-

excessively traded.   (Rec. Doc. 14 at 10).   They also allege that Lanclos misrepresented or failed to disclose the unsuitability of his investment recommendations, the existence of early termination fees, surrender fees, bonuses, commissions, and adverse tax consequences.  (Rec. Doc. 14 at 11-12).

In addition to asserting claims against Lanclos, the plaintiffs also sued certain brokerage companies with which he was affiliated or employed at various times, including American General.  The plaintiffs specifically allege that American General failed to properly train or supervise Lanclos and failed to review their statements for evidence of suitability, unauthorized trading, and excessive activity.  (Rec. Doc. 14 at 16).  The plaintiffs allege that American General's failure to properly train or supervise Lanclos violated federal securities laws, including 15 U.S.C. § 78t(a). (Rec. Doc. 14 at 21).  They also allege that American General is vicariously liable for Lanclos's torts, implicitly referencing Louisiana Civil Code Article 2320, which makes an employer responsible for the torts of its employees.  (Rec. Doc. 14 at 23).

## ANALYSIS

In support of its alternative motions, American General argues, first, that the plaintiffs' claims should be resolved by means of arbitration rather than through this lawsuit and, second, that the plaintiffs' claims are time-barred.  For the reasons fully explained below, the undersigned finds that the plaintiffs' claims against American

General are time barred, rendering discussion of the alternative motion to compel arbitration unnecessary.

## A.    THE STANDARD FOR ANALYZING A RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.[1]  When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto.[2]  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.[3]  However, conclusory allegations and unwarranted deductions of fact are not accepted as true,[4] and courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[5]

---

[1]        *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[2]        *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[3]        *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted), quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[4]        *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982), citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974); *Collins v. Morgan Stanley*, 224 F.3d at 498.

[5]        *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[6]  The allegations must be sufficient "to raise a right to relief above the speculative level,"[7] and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."[8]  "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[9]  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed."[10]

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "[D]etermining whether a

---

[6]      *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[7]      *Bell Atlantic v. Twombly,* 127 U.S. at 555.

[8]      *Bell Atlantic v. Twombly,* 127 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).

[9]      *Bell Atlantic v. Twombly*, 127 U.S. at 555 (citations, quotation marks, and brackets omitted; emphasis added).  *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009).

[10]      *Bell Atlantic v. Twombly*, 127 U.S. at 570.

[11]      *Ashcroft v. Iqbal*, 129 S.Ct. at 1949.

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[12] Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim."[13]

## B.   ARE THE PLAINTIFFS' CLAIMS AGAINST AMERICAN GENERAL TIME-BARRED?

Although prescription is an affirmative defense, a Rule 12(b)(6) motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint.[14]   Therefore, "[a] Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense."[15]   The party asserting prescription usually bears the burden of proving that a claim has prescribed; if prescription is evident on the face of the pleadings,

---

[12]     *Ashcroft v. Iqbal*, 129 S.Ct. at 1950.

[13]     *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556.  See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008).

[14]     *Songbyrd, Inc. v. Bearsville Records, Inc.*, 104 F .3d 773, 775 n.3 (5th Cir.1997); *Hilbun v. Goldberg*, 823 F.2d 881, 884 (5th Cir. 1987).

[15]     *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir. 1977).  See, also, *Bowers v. Nicholson*, 271 F. App'x 446, 449 (5th Cir. 2008).

however, the burden shifts to the plaintiff to establish that the applicable prescriptive period has been suspended or interrupted.[16]

As will be discussed in greater detail below, all of the plaintiffs' claims against American General appear to be prescribed on their face, under one or more state or federal statutes.  Therefore, the plaintiffs have the burden of demonstrating that the claims remain viable.

The plaintiffs attempt to satisfy their burden by characterizing their primary claim as one for "churning" or excessively buying and selling the securities in a customer's account.   "Churning occurs when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of his client's interests."[17]  The plaintiffs argue that any prescriptive period applicable to a claim for churning does not begin to run until the last in a series of acts constituting churning has been completed, relying upon the Fifth Circuit's description of this activity.  The Court said:

> Churning is a unified offense:   there is no single transaction, or limited, identifiable group of trades, which

---

[16]        *Taranto v. Louisiana Citizens Prop. Ins. Corp.*, 2010-0105 (La. 3/15/11), 62 So. 3d 721, 726; *Bailey v. Khoury*, 2004-0620 (La. 1/20/05), 891 So. 2d 1268, 1275; *Campo v. Correa*, 01-2707 (La. 06/21/02), 828 So.2d 502, 508; *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).

[17]        *Miley v. Oppenheimer & Co.*, 637 F.2d 318, 324 (5th Cir. 1981), abrogated by *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

> can be said to constitute churning.  Rather, a finding of churning, by the very nature of the offense, can only be based on a hindsight analysis of the entire history of a broker's management of an account and of his pattern of trading that portfolio, in comparison to the needs and desires of an investor.[18]

At oral argument, the plaintiffs clarified their argument, contending that even when a broker such as Lanclos changes his affiliation from one brokerage house to another and even when one annuity has been totally replaced with another, both the broker and the brokerage houses with which he has been affiliated should remain liable for any damage caused by the churning of his customers' accounts.  Despite the reprehensible nature of the allegations made in this lawsuit, the undersigned finds that this argument lacks merit.

American General's obligation to properly supervise and train Lanclos existed only while Lanclos was employed by American General.  Similarly, an employer is liable for the torts of its employee only if the employee's actions and omissions are within the course and scope of the employment.[19]  The plaintiffs allege that Lanclos's employment with American General occurred during the time period from 2001 to

---

[18]    *Miley v. Oppenheimer & Co*., 637 F.2d at 327.

[19]    See, e.g., *Orgeron on Behalf of Orgeron v. McDonald*, 93-1353 (La. 07/05/94), 639 So. 2d 224, 226-27.

2004, and no evidence has been presented to show that an employment relationship between Lanclos and American General existed at any other time.

The claims asserted by the plaintiffs concerning American General have to do with five annuities that were purchased in 2001 and 2002 and sold in 2004 as well as one annuity purchased in 2004 and sold in 2008.  Lanclos worked for American General during that same time period, from 2001 to 2004.  To the extent that the plaintiffs are alleging that American General's actions or omissions in training and supervising Lanclos harmed them, whether articulated as violations of state or federal law, any such harm necessarily occurred not later than the end of 2004.  Similarly, to the extent that the plaintiffs are alleging that American General is vicariously liable for injury caused by the actions or omissions of Lanclos in buying and selling annuities issued or underwritten by American General, any such harm necessarily occurred not later than the end of 2004 when the ties between Lanclos and American General were severed.  Even if the sums generated upon the sale or surrender of the annuities in 2004 were thereafter reinvested in other securities through other brokerage houses, there is sufficient attenuation between the American General annuities and any subsequent investment vehicles to ascribe separate limitations periods to the separate investments.  In other words, any churning of the five American General annuities ceased when the annuities were sold or surrendered in

2004; similarly, the churning of the Allianz annuity, if any, ceased in 2008 when that annuity was sold or surrendered.[20]

American General argues, in support of its motion to dismiss, that the plaintiffs' claims against it are time-barred, citing the statute of limitations for bringing a claim under the federal Securities Act of 1933 and 1934, the prescriptive period for Louisiana state-law torts, and the prescriptive period for asserting claims against insurance agents or brokers under Louisiana law.  Reference to all three is necessary since the character of the action alleged in the plaintiff's complaint determines the appropriate prescriptive period.[21]  Here, the plaintiffs assert Louisiana state-law tort claims and federal securities law violations, and the claims relating to American General are based on the sale of annuities, which are a form of insurance.[22]

American General's first argument is that the plaintiffs' claims are prescribed under La. R.S. 9:5606, a statute that establishes one-year and three-year peremptive

---

[20]     See, *Potier v. JBS Liberty Sec., Inc.*, No. 13-0789, 2014 WL 4219253, at *9 (W.D. La. Aug. 22, 2014) ("Although it is not clear when the Potiers learned of the alleged 'churning' with respect to this particular annuity contract, there can be no doubt that any actual churning with respect to this annuity contract – if such churning did occur – ceased when the annuity contract was surrendered for its cash value in 2001.")

[21]     *Loew's, Inc. v. Don George, Inc.*, 237 La. 132, 110 So.2d 553, 557 (1959); *Clark v. Constellation Brands, Inc.*, 348 F. App'x 19, 22 (5th Cir. 2009).

[22]     *Potier v. JBS Liberty Sec., Inc.*, No. 13-0789, 2014 WL 4219253, at *8 (W.D. La. Aug. 22, 2014)("In *Klein v. American Life & Cas. Co.*, 858 So.2d 527, 531 (LA.App. 1st Cir.2003), the court recognized annuities are a form of insurance, and claims arising from 'an engagement to provide insurance services' fall within the purview of La.Rev.Stat. § 9:5606.")

-10-

periods for claims against persons providing insurance services.  Subsection A of this statute reads as follows:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.  However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

The plaintiffs' claims against American General concern Lanclos's investment of the plaintiffs' funds in annuities issued or underwritten by American General and the annuity issued or underwritten by Allianz.  Since annuities are recognized in Louisiana law as insurance products, the claims relating to these annuities are limited by the cited statute.  The plaintiffs claim that five American General annuities were purchased between 2001 and 2002 and that all five of them were sold or surrendered not later than July 21, 2004.  They claim that the Allianz annuity was purchased in 2004 and sold or surrendered in August 2008.  Lanclos stopped working for American General in December 2004.  Therefore, the plaintiffs had a maximum of three years, either from the sale of the annuities or from the end of Lanclos's tenure

with American General, to bring a claim concerning these annuities.  But no claim was asserted against American General until October 2013, when the first amended and restated complaint was filed in this action.  Therefore, from the face of the complaint, the claim is prescribed under Louisiana law, shifting the burden to the plaintiffs to establish that the claim remains viable.

The plaintiffs argue that the peremptive periods established in La. R.S. 9:5606 do not apply because they have alleged fraud.  Subsection C of the statute expressly states:  "The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953."  Civil Code Article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."   The plaintiffs allege that Lanclos made various misrepresentations, thus stating a fraud claim.

Subsection D of La. R.S. 9:5606 expressly describes both the one-year and the three-year limitations periods set forth in that statute as peremptive periods rather than prescriptive periods.  However, Louisiana jurisprudence is clear that the fraud exception in the statute voids only the three-year peremptive period.[23]   A claim

---

[23]     *Huffman v. Goodman*, 34,361 (La. App. 2 Cir. 4/4/01), 784 So. 2d 718, 727, *writ denied,* 2001-1331 (La. 06/22/01), 794 So. 2d 791.  See, also, *Broussard v. Toce,* 99–555 (La. App. 3 Cir. 10/13/99), 746 So.2d 659, 662 (holding that La. R.S. 9:5605(E), the fraud exception in the

asserted against an insurance agent or broker remains subject to the one-year limitations period, which mirrors the one-year prescriptive period applicable to torts including fraud.  Under Louisiana law, tort claims, including fraud claims, are subject to liberative prescription of one-year, which runs from the date that the injury or damage is sustained[24] while the one-year limitations period created in La. R.S. 9:5606 must be calculated from the date on which the alleged act, omission, or neglect complained of was or should have been discovered.  In this case, however, there is no allegation that the plaintiffs were unaware of the purchase or sale of the five American General annuities or the relevant Allianz annuity when the purchases and sales occurred.  Although the plaintiffs generally allege that they may have been harmed by Lanclos's trading securities other than those identified in their complaint since he allegedly failed to keep complete records and allegedly failed to provide the plaintiffs with accurate statements, no specific allegations are made with regard to products purchased from or underwritten by American General or while Lanclos was employed by American General and no delayed discovery of the harm resulting from the alleged purchase or sale of the five American General annuities or the relevant Allianz annuity is claimed.  Absent any such allegations, the plaintiffs cannot satisfy

---

legal malpractice statute, carves out an exception for the three-year peremptive period only).

[24]    La. Civ. Code. art. 3492; *Clark v. Constellation Brands, Inc.*, 348 F. App'x at 22.

their burden of showing that prescription failed to start running, at the latest, one year after the sale of the American General and Allianz annuities or, with regard to American General's vicarious liability for Lanclos's actions, one year after Lanclos ceased working for American General.  Accordingly, even when the fraud exception is applied to invalidate the three-year peremptive period created by the statute, the one-year limitations period continues to limit the time period during which a claim arising out of the purchase or sale of the American General and Allianz annuities can be asserted.  The undersigned finds that the plaintiffs' claims against American General based on the sale of annuities to the plaintiffs prescribed either one year after the American General annuities were sold in 2004, one year after the Allianz annuity was sold in 2008, or one year after Lanclos stopped working for American General in 2004 but, in any case, long before the plaintiffs in this lawsuit asserted claims against American General in their first amended complaint, which was filed in October 2013.

To the extent that the plaintiffs assert claims against American General under the federal securities laws, a similar analysis must be applied.  The relevant statute of limitations creates a the two-year limitations period and a five-year limitations period, as set forth in 28 U.S.C. § 1658(B).  The statute reads as follows:

(a)  Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

(b)  Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--

    (1)  2 years after the discovery of the facts constituting the violation; or

    (2)  5 years after such violation.

Thus, like the one-year and three-year peremptive periods created under Louisiana state law, this statute creates a two-year limitations period and a five-year statute of repose.  Again, the plaintiffs did not allege that there was a delay on their part in discovering the purchase or sale of the American General or Allianz annuities or the damages that allegedly resulted from those transactions or any related actions or omissions by American General.  The plaintiffs must, therefore, be charged with knowledge that the annuities were purchased in 2001, 2002, and 2004 and sold in 2004 and 2008, that Lanclos was no longer affiliated with American General after the end of 2004, and that any damages arising out of the investment of their money in these annuities were apparent upon the sale of the annuities in 2004 with regard to the American General annuities and in 2008 with regard to the Allianz annuity.  Thus, the plaintiffs' failure to assert a claim within two years of 2004 or 2008 foreclosed their

right to seek redress from American General and recourse need not be made to the five year statute of repose.

Regardless of when the plaintiffs might have discovered their alleged damages, however, any claims they might have had arising out of the purchase or sale of the American General or Allianz annuities, Lanclos's alleged churning of those accounts, or American General's training and supervision of Lanclos or its vicarious liability for his conduct related to the annuities, had to have been asserted not more than five years after the transactions occurred.  Therefore, to be timely, any claims arising out of the annuities and based on federal securities law had to have been asserted not later than five years after 2004 with regard to the American General annuities and not later than five years after 2008 with regard to the Allianz annuity.  But no claim with regard to the American General annuities or American General's direct or vicarious liability was asserted until October 2013, after the statute of repose precluded the assertion of any such claims.

The plaintiffs suggest that, at least with regard to the Allianz annuity, the claim against American General is timely because this lawsuit was filed in April 2013 even though no claim was asserted against American General until the first amended complaint was filed in October 2013.  The undersigned finds, however, that this argument lacks merit.  Because American General was a wholly new party to the

-16-

lawsuit, however, the first amended complaint does not relate back to the filing of the original complaint.[25]  Therefore, the filing of the original complaint did not interrupt or suspend the running of the five year statute of repose, which elapsed in August 2013 with regard to the Allianz annuity.  Accordingly, the plaintiffs' claims under the federal securities laws are time-barred.

## CONCLUSION

For the foregoing reasons, the undersigned concludes that the plaintiffs' claims against American General are time barred.  Accordingly,

IT IS RECOMMENDED that defendant American General Securities, Inc.'s Rule 12(b)(6) motion (Rec. Doc. 73) to dismiss the plaintiffs' claims against it on the basis that they are time-barred be granted, that resolution of the alternative motion to compel arbitration and dismiss proceedings be pretermitted, and that the plaintiffs' claims against American General Securities, Inc. be dismissed without prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after

---

[25]     *Braud v. Transport Service Co. of Ill.*, 445 F.3d 801, 806 (5th Cir. 2006).

being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on this 29th day of September 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE:   9/30/2014
BY:         EFA
TO:         RFD
        cg

-18-