RECEIVED

MAY - 7 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH CLYDE POTIER, ET AL. | CIVIL ACTION NO. 13-0789 |
| VERSUS | JUDGE DOHERTY |
| JBS LIBERTY SECURITIES, INC., ET AL. | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Pending before the Court is the "Motion for Summary Judgment Pursuant to Rule 56" [Doc. 90] filed by defendant JBS Liberty Securities, Inc., d/b/a JBS Investment Group, LLC ("JBS"), wherein JBS seeks dismissal of all claims brought against it by the plaintiffs under Rule 56 of the Federal Rules of Civil Procedure on grounds all of plaintiffs' claims are time-barred. The motion is opposed by the plaintiffs Joseph Clyde and Glenda Potier ("plaintiffs") [Doc. 94], and JBS has filed a "Motion for Leave to File Reply Memorandum to Plaintiffs' Memorandum in Opposition RE: Motion for Summary Judgment Pursuant to Rule 56" [Doc. 95], which is herein GRANTED.

For the following reasons, the motion for summary judgment is GRANTED IN PART and DENIED IN PART, as discussed herein.

**I.    Factual and Procedural History**

The crux of the instant lawsuit is plaintiffs' allegation that Roger Dale Lanclos – alleged to be a securities "broker" – and certain brokerage firms, including JBS, are liable to the plaintiffs for losses suffered as a result of certain securities transactions. As this Court has noted in previous rulings in this matter, notwithstanding this Court's succinct summary of the plaintiffs' allegations, the plaintiffs' Second Amended Complaint is inartfully drafted and vaguely worded, and this Court

has had difficulty determining which specific claims are pled against which specific defendant, which has made adjudication of the instant motion and other motions in this case problematic. Nevertheless, as it has done in the past, the Court has parsed the arguments of the parties as best it can and will address the motion, as follows.

Jurisdiction of the entire action is alleged under 28 U.S.C. §1331 (federal question), the provisions of the Securities Act of 1933, 15 U.S.C. §77a, *et seq.*, and the provisions of the Securities Exchange Act of 1934, 15 U.S.C. §78a. The plaintiffs' claims primarily focus on the actions of Mr. Lanclos. The dates of Mr. Lanclos's employment with JBS – where plaintiffs allege Mr. Lanclos was a "brokerage agent and financial advisor" – are disputed. Plaintiffs allege Mr. Lanclos was employed by JBS from March 2007 to December 2010.[1] However, in its opposition brief, JBS avers Mr. Lanclos was employed by the company from November 2006 through December 2010.[2]

The following facts appear to be undisputed:

- Lanclos was licensed by the National Association of Securities Dealers ("NASD"), now "FINRA," between November of 1986 and May of 2001.

- Two annuity/insurance contracts were purchased by plaintiffs through JBS: RBC Variable Universal Life Insurance Policy No. 1002003778 and RBC Variable Universal Life Insurance Policy No. 1002003779.

- The purchase date of both annuities was March 6, 2008.

- Plaintiffs paid the premium for the two annuities on June 2, 2008.

In the instant motion, JBS seeks dismissal of all claims against it under Fed.Riv.Civ.P. 56 on grounds the plaintiffs' claims are time-barred under both federal and state law, all as more fully

---

[1] *See* Second Amended and Restated Complaint and Jury Demand, Doc. 14, at ¶¶2 & 14.

[2] *See* Declaration of Jeffrey D. Jones, General Counsel/Director of Compliance for JBS Liberty Securities, Inc., attached as Exhibit 1 to JBS's motion for summary judgment, Doc. 90, at ¶4.

2

set forth below. JBS also argues by way of its reply brief that, for the first time in its opposition brief, plaintiffs specifically claim JBS is liable for conduct related to the sale or surrender of four Allianz insurance products surrendered by the Potiers in 2008 and an "RBC single premium deferred annuity" sold or surrendered by the Potiers on March 3, 2010 through Liberty Life Insurance Company, none of which were sold or surrendered through JBS. Therefore, JBS argues it can have no liability for claims related to the Allianz and "RBC single premium deferred annuity contract," as these products were not sold or surrendered through JBS.

## II. Law and Analysis

The crux of the plaintiffs' claims against JBS is that JBS failed to supervise Mr. Lanclos during his "churning" activities and is therefore liable under Louisiana tort law theories of vicarious liability and *respondeat superior* and federal securities laws. JBS seeks dismissal of all of the plaintiffs' claims against it on grounds the plaintiffs' claims are time-barred under state and federal law and on grounds certain of the products plaintiffs allegedly sold or surrendered were not sold or surrendered through JBS.

### 1. Motion for Summary Judgment Standard

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific

3

> facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. *Id.* at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.

4

> Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

Id. at 888-89 (1990)(internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

2. **Analysis**

Plaintiffs claim JBS is liable to them under a theory of *respondeat superior* for advice given to them by Mr. Lanclos and activities engaged in by Mr. Lanclos during the time of his employment with JBS, which was from either March 2007 to December 2010 (under the plaintiffs' version of the facts) or from November 2006 through December 2010 (under JBS's version of the facts).

5

Regardless of the dates of employment, however, it is undisputed the purchase date of both JBS annuities was March 6, 2008. The plaintiffs have not alleged that they were not aware of the purchase date of these two annuities.

As have other defendants in this matter, JBS argues to the extent the plaintiffs are claiming damages relating to annuities, such claims are subject to the peremptive periods set forth in La. Rev. Stat. §9:5606. To the extent state law would govern plaintiffs' claims against JBS, this Court notes La. Rev. Stat. §9:5606(A) states:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue <u>within one year from the date of the alleged act</u>, omission, or neglect, <u>or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.</u>

La. Rev. Stat. §9:5606(A) (emphasis added).

La. Rev. Stat. 22:6(17) defines an "annuity" as follows:

(17) Annuity. A contract sold by insurance companies that pays an income benefit for the life of a person, for the lives of two or more persons, or for a specified period of time, or a contract that may provide for a series of payments to be made or received at regular intervals at the direction of the contract holder.

In *Klein v. American Life & Cas. Co.*, 858 So.2d 527, 531 (LA. App. 1st Cir. 2003), the court recognized annuities are a form of insurance, and claims arising from "an engagement to provide insurance services" fall within the purview of La. Rev. Stat. §9:5606.

Thus, as this Court has noted in previous rulings, to the extent the plaintiffs' claims against JBS relate to annuities, the plaintiffs' claims are subject to the delays set forth within La. Rev. Stat.

6

§9:5606(A), that is, the plaintiff's claims must have been filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect was discovered or should have been discovered, however in no event can the action be filed more than three years after the date of the alleged act, omission, or neglect.[3]

Once the appropriate limitations period has been determined, the Court must determine when the limitations period began to run. The crux of the plaintiffs' allegations is unlawful churning of the plaintiffs' investment accounts. The Fifth Circuit has stated that "[c]hurning occurs when a securities broker enters into transactions and manages a client's account for the purpose of generating commissions and in disregard of his client's interests." *Miley v. Oppenheimer & Co., Inc.* 637 F.2d 318, 324 (5th Cir. 1981), *rev'd on other grounds, citing McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 890 n.1 (5th Cir. 1979); *Mihara v. Dean Witter & Co., Inc.*, 619 F.2d 814, 820 (9th Cir. 1980). The Fifth Circuit has noted the statute of limitations – whatever it may be – does not begin to run until "the aggrieved party has either actual knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Romano v. Merrill Lynch, Pierce, Fenner & Smith*, 834 F.2d 523, 528 (5th Cir. 1987), *citing First Federal Savings & Loan Association of Miami v. Mortgage Corporation*, 650 F.2d 1376, 1378 (5th Cir.1981). The Fifth Circuit has explained a "churning cause of action may be particularly difficult to detect if the customer is an unsophisticated investor[;] because churning is conduct which is not common to the experience of the ordinary individual, it is consequently not easily recognizable to

---

[3] With the 1999 amendments to the Louisiana revised statutes, both the one- and three-year limitations periods contained within Section 9:5606(A) are peremptive rather than prescriptive, meaning that if the plaintiff fails to file his or her action within that peremptive period, the action is extinguished. *See, e.g., Huffman v. Goodman*, 784 So.2d 718, 724 (La. App. 2nd Cir. 2001).

unsophisticated investors." *Romano*, 845 F.2d at 528, *citing Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 172 (10th Cir.1974).

In *Romano*, the Fifth Circuit stated:

> Because of the character of the offense, churning is not limited to a single transaction. As we have stated before: Churning is a unified offense: there is no single transaction, or limited, identifiable group of trades, which can be said to constitute churning. Rather, a finding of churning, by the very nature of the offense, can only be based on a hindsight analysis of the entire history of a broker's management of an account and of his pattern of trading that portfolio, in comparison to the needs and desires of an investor.

*Id.* at 528, *citing Miley v. Oppenheimer & Company*, 637 F.2d 318, 327 (5th Cir.1981).

JBS takes the position that all of the plaintiffs' claims are time-barred under Section §9:5606(A), because the plaintiffs had knowledge of the purchase of the annuities on March 6, 2008. JBS argues the plaintiffs' claim prescribed on March 7, 2009, over four years prior to the filing of the plaintiffs' complaint on April 16, 2013. JBS further argues that even assuming the three-year peremptive period applies, the plaintiffs' claims prescribed on March 7, 2011, still well before the filing of the plaintiffs' complaint.

In response, the plaintiffs argue the last act of churning begins the tolling of time for all claims. Thus, the plaintiffs argue that because Mr. Lanclos's last act of churning while working for JBS was August 19, 2008, and because that date was within five years of the filing of the complaint in the instant case (April 16, 2013), the plaintiffs' claims against JBS are timely. However, in their reply brief, JBS argues the securities that were sold or surrendered on August 19, 2008 were products of Allianz Life Insurance Company and were not sold or surrendered through JBS. Therefore, JBS argues it can have no liability relating to these products. However, JBS cites this Court to no authority for its argument that it cannot be held liable simply because the broker it employed sold

8

or surrendered a product of another company. For instance, in the instant case, this Court dismissed a claim against defendant American General where the plaintiffs alleged, similarly, that American General was liable for churning in connection with Mr. Lanclos's handling of the same Allianz annuities sole or surrendered in August 2008. Under the facts as they related to American General, however, because Mr. Lanclos's employment with American General ended in 2004, any potential claims of churning against American General were prescribed, because in order for American General to held liable on a theory of *respondeat superior*, it must have employed Mr. Lanclos at the time of the alleged churning. Mr. Lanclos stopped working for American General in 2004, therefore, all claims against American General in connection with churning had prescribed by 2009. Again, the claims in the instant case were not filed until April 2013.

In the instant case, however, Mr. Lanclos remained employed at JBS until 2010. JBS simply has not provided this Court with persuasive authority that there can be no liability on the part of JBS for churning in connection with the sale of the Allianz products, given that the Allianz annuities were sold in August 2008, which is within the five-year *federal* limitations period in this matter. Thus, to the extent that *federal* securities law governs the plaintiffs' claims against JBS, JBS has not satisfied its burden to show it is entitled to a dismissal of the plaintiffs' claims at this juncture.

Considering the foregoing, to the extent that plaintiffs' claims against JBS are governed by the provisions of La. Rev. Stat. §9:5606(A), all such claims are perempted and are DENIED AND DISMISSED WITH PREJUDICE.

However, to the extent that the plaintiffs are alleging "churning" claims in violation of *federal* securities laws, and in particular, plaintiffs' claims under the Securities Acts of 1933 and 1934, this Court concludes such claims should not be dismissed at this time, having concluded JBS

9

has failed to satisfy its burden to show it is entitled to a dismissal of plaintiffs' claims under these federal provisions at this time.[4]

### III. Conclusion

For the foregoing reasons, the Motion for Summary Judgment Pursuant to Rule 56" [Doc. 90] filed by JBS is GRANTED IN PART and DENIED IN PART. IT IS ORDERED that, to the extent the plaintiffs' claims against JBS arise under state law, such claims are time-barred under the provisions of La. Rev. Stat. §9:5606(A), and all such claims are DENIED AND DISMISSED WITH PREJUDICE as perempted.

However, to the extent that the plaintiffs are alleging "churning" claims in violation of *federal* securities laws, and in particular, plaintiffs' claims under the Securities Acts of 1933 and 1934 and 15 U.S.C. §7t(a), such claims do not appear to be prescribed, JBS having failed to meet its burden to show it is entitled to a dismissal of plaintiffs' claims under these federal provisions at this time.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 7th day of May, 2015.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[4] In the same vein, plaintiffs "failure to supervise" claim – somewhat vaguely alleged against all "brokerage firms," which would appear to include JBS – in violation of 15 U.S.C. §7t(a), similarly appears not to be prescribed, as it, too, arises under federal law and is subject to a five-year state of repose.

10