# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH CLYDE POTIER, ET AL. | CIVIL ACTION NO. 13-0789 |
| VERSUS | CHIEF JUDGE S. MAURICE HICKS, JR. |
| JBS LIBERTY SECURITIES, INC., ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Before the Court is a Motion to Reconsider (Record Document 119) filed by Plaintiffs Joseph Clyde Potier and Glenda Potier (collectively "the Potiers"). Pursuant to Federal Rule of Civil Procedure 54(b), the Potiers seek reconsideration of a May 7, 2015 Memorandum Ruling and Order issued by the Honorable Rebecca F. Doherty,[1] wherein the Court dismissed the Potiers' claim of vicarious liability brought against Defendant JBS Liberty Securities, Inc. d/b/a JBS Investment Group, LLC ("JBS") for the actions of its employee, Roger Dale Lanclos ("Lanclos"). See Record Documents 101 and 103. The Motion to Reconsider is unopposed. See Record Documents 120, 128, and 130. For the reasons set forth below, the Motion to Reconsider is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2013, the Potiers brought suit against Lanclos, their brokerage agent, and his employer JBS, alleging Lanclos "had been pillaging their retirement accounts to generate excessive commissions. . . ."[2] Record Document 119-1 at 1. According to the

---

[1] Following Judge Doherty's retirement, the Potiers' suit was reassigned to the undersigned on December 1, 2017. See Record Document 132.

[2] The Potiers originally named as defendants several other business entities which allegedly employed Lanclos at various times. All defendants except Lanclos and JBS were subsequently dismissed. See Record Documents 34-35, 76, 78, 88-89.

Potiers, Lanclos was employed as a broker and agent for JBS from November 2006 through December 2010. Record Document 94-1 at ¶ 2. During that time, Lanclos invested the Potiers' money and managed their financial accounts by purchasing and selling various securities and annuities through JBS. Record Document 14 at ¶¶ 14-15. The Potiers allege while managing their accounts, Lanclos engaged in a continuous process of purchasing and selling the same or similar annuity funds in order to generate "large up-front commissions, bonuses, and fees" for himself and JBS. Id. at ¶ 17. The Potiers contend the annuities purchased by Lanclos on their behalf were not suitable for their financial goals, risk tolerance or investment objectives. Id. at ¶ 16-17. The Potiers further allege Lanclos made material misrepresentations to them regarding the quality of his investments and failed to disclose the financial consequences of his investment decisions. Id. at ¶ 21. The Potiers assert Lanclos engaged in a pattern of conduct intended to defraud them in order to benefit himself and JBS. Id. at ¶¶ 18, 21-22, 24-26.

The Potiers' complaint sets forth various claims under federal securities law against Lanclos and JBS. The complaint additionally asserts one state law claim against JBS, alleging JBS is vicariously liable for its failure to properly train or supervise Lanclos and its failure to review the Potiers' statements for evidence of suitability, unauthorized trading, and excessive activity. Id. at ¶¶ 31, 61-63. On November 6, 2014, JBS filed a Motion for Summary Judgment arguing all claims asserted against it were time barred, and therefore all of the Potiers' claims asserted against JBS must be dismissed. Record Document 90. On May 7, 2015, the Court granted the motion with regard to the Potiers' state law claim, and denied the motion with regard to the federal law claims. Record Document 101. As to the state law claim of vicarious liability, the Court found the claim was perempted

pursuant to La. R.S. § 9:5606 (Actions for professional insurance agent liability). Id. at 9.

The Potiers now seek reconsideration of that portion of the ruling dismissing their state law claim against JBS for vicarious liability. The basis for the motion is that subsequent to issuance of this Court's ruling, the Louisiana Supreme Court clarified the law in this area by resolving a circuit split and held that for actions involving legal malpractice, once fraud is established the peremptive periods set forth in La. R.S. 9:5605 do not apply and instead courts must look to the ordinary one-year prescriptive period set forth in La. Civ. Code art. 3492. See Lomont v. Bennet, 2014-2483 (La. 6/30/15), 172 So.3d 620, 637. Although Lomont addressed the fraud exception set forth in La. R.S. 9:5605 (Actions for legal malpractice), the Potiers contend the same reasoning should apply to their claim brought under La. R.S. 9:5606 (Actions for professional insurance agent liability), arguing because the two statutes are virtually identical the same interpretation should govern La. R.S. 9:5606. Record Document 119-1 at 2-3.

## STANDARDS OF REVIEW

**I.     Reconsideration**

Reconsideration of interlocutory orders is governed by Fed. R. Civ. P. 54(b). Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017). Rule 54(b) states in pertinent part, "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for

any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." Austin, 864 F.3d at 336 (internal quotation marks omitted).³ "Although the district court's discretion in this regard is broad, it is exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." Castrillo v. American Home Mortg. Servicing, Inc., 2010 WL 1424398, *3 (E.D.La.) (citing Calpetco 1981 v. Marshall Exploration, Inc., 989 F.2d 1408, 1414–15 (5th Cir.1993); 18B CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4478.1 (2d ed. 2002)). "[A] successor judge has the same discretion to reconsider an order as would the first judge, but should not overrule the earlier judge's order or judgment merely because the later judge might have decided matters differently." U.S. v. O'Keefe, 128 F.3d 885, 891 (5th Cir. 1997).

## II.  Summary Judgment

"A party may move for summary judgment, identifying each claim or defense–or the

---

³In Austin, the Fifth Circuit addressed the distinction between Rule 54(b), which governs reconsideration of interlocutory orders, and Rule 59(e), which governs motions to alter or amend final judgments. Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir.2017). Unlike Rule 54(b) which authorizes the district court to revise any order or decision that does not end the action at any time, Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence," and as such, Rule 59(e) is "an extraordinary remedy that should be used sparingly." Id. (alteration in original) (quoting Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004)). In contrast to Rule 59(e), Rule 54(b) allows a more flexible approach to the interlocutory presentation of new arguments as a case evolves, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." Id. at 336-37 (quoting Cobell v. Jewell, 802 F.3d 12, 25–26 (D.C. Cir. 2015)).

part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." Quality Infusion Care, Inc. v. Health Care Service Corp., 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir.2001); see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist., 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004)(alterations in original)(quoting Celotex v. Catrett, 477 U.S. 317, 322 (1986)).

**LAW AND ANALYSIS**

The Potiers now seek reconsideration of that portion of this Court's prior ruling dismissing their state law claim against JBS for vicarious liability. Again, the motion is unopposed. Relying upon the Louisiana Supreme Court's decision in Lomont, the Potiers argue this Court should reconsider the prior ruling "and find the Potiers' state law claims against JBS are not time barred under La. Rev. Stat. §9:5606." Record Document 119-1 at 3 (citing Lomont v. Bennett, 2014-2483 (La. 6/30/15), 172 So.3d 620).

In Lomont, a client filed a legal malpractice claim against her former attorney, alleging the attorney had failed to record a community property settlement giving the client the family home, and as a result, a third-party creditor was able to file a lien against the property. Lomont, 172 So.3d at 623-24. It was undisputed the act of malpractice was the attorney's failure to record the settlement agreement in the public records prior to February 20, 2009, i.e., the date the third-party recorded its lien. Id. at 626. Because suit was filed more than three years after the act of malpractice, the attorney argued the claim was perempted pursuant to La. R.S. 9:5605. Id. at 623.

The time limits to file a legal malpractice action are set forth in La. R.S. 9:5605, which provides in pertinent part:

> A. No action for damages against any attorney at law duly admitted to practice in this state . . . , whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be

> brought unless filed . . . within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> B. . . . The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
>
> . . . .
>
> E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

La. R.S. 9:5605. The Lomont court found under the clear wording of La. R.S. 9:5605(A) and (B) plaintiff's suit, which was filed more than three years after the act of malpractice, "would be preempted." Lomont, 172 So.3d at 626. However, the plaintiff asserted the peremptive period was "not applicable based on the fraud exception set forth in La. R.S. 9:5605(E)." Id.

In examining the issue, the Louisiana Supreme Court first held allegations of post-malpractice fraudulent concealment can constitute fraud as contemplated by La. R.S. 9:5605(E), overruling lower court decisions holding that the fraud exception set forth in La. R.S. 9:5605(E) is applicable only in cases where the fraudulent act itself constitutes the malpractice.[4] Id. at 627-29. The court next determined the attorney intended to defraud

---

[4] In conformity with this holding, the court explained the original act of malpractice - in Lomont, the attorney's failure to record the community property settlement - need not necessarily be fraudulent in order to trigger the fraud exception to La. R.S. 9:5605. Rather, the Supreme Court found the attorney's post-malpractice acts of fraudulent concealment, done in an effort to cover up her original act of malpractice, were sufficient to trigger the fraud exception. Lomont, 172 So.3d 627-29.

her former client by lulling her into inaction in an effort to avoid a malpractice suit, and therefore the attorney's actions "fit squarely within the definition of fraud in La. C.C. art. 1953."[5] Id. at 634-35.

The court then held "in cases where fraud is established pursuant to La. R.S. 9:5605(E), a legal malpractice claim is governed by the one-year prescriptive period set forth in La. C.C. art. 3492. [6] Id. at 637. In reaching this holding, the court reasoned as follows:

> This court has previously recognized La. R.S. 9:5605 provides three peremptive periods: (1) a one-year peremptive period from the date of the act, neglect, or omission; (2) a one-year peremptive period from the date of discovering the act, neglect, or omission; (3) and a three-year peremptive period from the date of the act, neglect, or omission when the malpractice is discovered after the date of the act, neglect, or omission. Because all of the time periods in La. R.S. 9:5605 are peremptive in nature, the clear wording of Subsection (E) mandates that none of the time periods in the statute can be applied to legal malpractice claims once fraud had been established. After de novo review we interpret the statute to provide that once fraud is established, **no** peremptive period set forth in the statute is applicable.
>
> Having eliminated application of all of the limitation periods in La. R.S. 9:5605, we find it is proper to revert to the limitation period in effect prior to enactment of La. R.S. 9:5605. . . .
>
> Before the enactment of La. R.S. 9:5605, an action for legal malpractice was generally considered a delictual action governed by the one-year prescription of La. C.C. art. 3492. . . . Thus, we hold in cases where fraud is established pursuant to La. R.S. 9:5605(E), a legal malpractice claim is governed by the one-year prescriptive period set forth in La. C.C. art. 3492.

---

[5]Louisiana Civil Code article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."

[6]Louisiana Civil Code article 3492 provides in pertinent part: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

Id. at 636-37 (citations omitted; emphasis in original; footnote omitted).

Turning to whether the client's suit was timely filed, the court found because the client's delay in bringing her suit was a direct result of the fraud committed by her former attorney, the doctrine of *contra non valentem* applied thereby preventing "the running of liberative prescription." Id. at 637 (one of the factual situations in which *contra non valentem* prevents the running of prescription is "where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action"). The court then determined prescription began to run on the claim on June 28, 2012, when the client first discovered her former attorney had fraudulently concealed her malpractice, the lien could not be removed from her property, and she had a malpractice claim against her former attorney. Id. at 638. Because the lawsuit was filed less than a month after the client discovered the attorney's malpractice, the court held the suit was timely filed. Id. at 639.

Turning to the matter before this Court, because the Court is reconsidering a claim brought pursuant to Louisiana substantive law, it is "bound to apply the law as interpreted by the state's highest court." Barfield v. Madison Cty., 212 F.3d 269, 271-72 (5th Cir. 2000). "If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.'" Id. at 272 (quoting Transcontinental Gas v. Transportation Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992)). The Louisiana Supreme Court has not addressed whether the peremptive periods set forth in La. R.S. 9:5606(A) govern a claim for insurance agent malpractice once fraud is established. Accordingly, the Court must make an Erie-guess as to how the Louisiana Supreme Court would rule on this issue. Hodges v. Mack Trucks

Inc., 474 F.3d 188, 199 (5th Cir. 2006) (Where the state's highest court has not spoken, courts must make an "*Erie*-guess" in predicting how that court would rule); see generally Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). In making this determination, courts are to rely upon the following:

> (1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.

Gulf and Mississippi River Transp. Co., Ltd. v. BP Oil Pipeline Co., 730 F.3d 484, 488-89 (5th Cir. 2013) (alterations in original) (quoting Am. Int's Specialty Lines Co. v. Rentech Steel, L.L.C., 620 F.3d 558, 564 (5th Cir. 2010)).

The Court finds the statute at issue in this matter, La. R.S. 9:5606, is virtually identical in substance to the statute at issue in Lomont. Louisiana Revised Statute 9:5606 reads in pertinent part:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> . . . .
>
> C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.
> D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code

> 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

La. R.S. 9:5606. When analyzing one or the other of the above-referenced professional malpractice statutes (i.e., La. R.S. 9:5605 or 5606), numerous Louisiana cases rely upon jurisprudential interpretations of the statutes interchangeably in support of their interpretations. See e.g. Burk Property Investments, LLC v. Alliance Ins. Agency Services, Inc., 2008-0489 (La. App. 4 Cir. 9/10/08), 993 So.2d 810, 813-14; Biggers v. Allstate Ins. Co., 04-282 (La. App. 5 Cir. 10/26/04), 886 So.2d 1179, 1181; Klein v. American Life & Cas. Co., 2001-2336 (La. App. 1 Cir. 6/27/03), 858 So.2d 527, 531 n.4; Huffman v. Goodman, 34,361 (La. App. 2 Cir. 4/4/01), 784 So.2d 718, 727; A3M Vacuum Services, L.L.C. v. Hub Intern. Midwest, Ltd., 17 F.Supp.3d 554, 560 (E.D.La. 2014).

The Court further notes both pre and post-Lomont, two Louisiana appellate circuits have held where fraud is established in cases involving insurance agent malpractice, the one-year prescriptive period set forth in La. Civ. Code art 3492 is the governing statute rather than the peremptive periods set forth in La. R.S. 9:5606(A). Cerullo v. Heisser, 16-558 (La. App. 5 Cir. 2/8/17), 213 So.3d 1232, 1236-37 (citing Shermohmad v. Ebrahimi, 06-512 (La. App. 5 Cir. 10/31/06), 945 So.2d 119, 122); Klein v. American Life & Cas. Co., 2001-2336 (La. App. 1 Cir. 6/27/03), 858 So.2d 527, 531 n.4. When making an Erie guess, courts are to rely upon "lower state court decisions." Gulf and Mississippi River Transp. Co., Ltd., 730 F.3d at 488.

Additionally, the Lomont court's holding that none of the time periods set forth in La. R.S. 9:5605(A) are applicable once fraud is established was based upon "statutory interpretation." Lomont, 172 So.3d at 636. This Court finds no compelling reason that the

"rationales and analyses" underlying the Louisiana Supreme Court's statutory interpretation of La. R.S. 9:5605 in Lomont should not apply with equal force to a claim involving insurance agent malpractice. Gulf and Mississippi River Transp. Co., Ltd., 730 F.3d at 488-89 (When making an Erie guess, courts are to rely upon "decisions of the [Louisiana] Supreme Court in analogous cases, . . . [and] the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues") (alterations in original) (quoting Am. Int's Specialty Lines Co., 620 F.3d at 564. Thus, like La. R.S. 9:5605, because all time periods in La. R.S. 9:5606(A) are peremptive, "the clear wording of Subsection [D] mandates that none of the time periods in the statute can be applied to [insurance agent] malpractice claims once fraud has been established." Lomont at 636. Accordingly, the Court holds in claims of insurance agent malpractice, once fraud is established, the one-year prescriptive period set forth in La. Civ. Code art. 3492 governs, rather than the one and three-year peremptive periods set forth in La. R.S. 9:5606(A).

The Court now turns to an examination of whether Lanclos' alleged conduct, if proven, could constitute fraud:

> Fraud is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other" and can result from silence or inaction. La. C.C. art. 1953. To find fraud from silence, there must be a duty to speak. "Louisiana law recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair but is fraudulent." Bunge Corporation v. GATX Corporation, 557 So.2d 1376, 1383 (La.1990). There are two elements necessary to prove legal fraud: an intent to defraud and a resulting damage. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art.1957; Shelton v. Standard/700 Associates, 01–0587 (La.10/16/01), 798 So.2d 60, 64. Circumstantial evidence, including highly suspicious facts and circumstances, may be considered in determining whether fraud has been committed.

Lomont, 172 So.3d at 629 (citations omitted).

According to the Potiers, they first began to investigate potential issues with their investment accounts on May 3, 2012, when they received a letter from Aviva Life and Annuity ("Aviva"), advising Aviva had received a Notice of Levy from the Internal Revenue Service regarding Contract No. 040646, which was a "single premium indexed deferred annuity" purchased by Lanclos through Aviva on September 15, 2008. Record Documents 94 at 10, 94-2 at 6, and 14 at ¶ 15(n). On May 7, 2012, Joseph C. Potier and Dallas Fleming, an accountant and friend of the Potiers, contacted the IRS and were advised by the IRS that multiple Form 1099s pertaining to certain investments were missing from the Potiers tax returns. Record Document 94 at 10. On May 15, 2012, the Potiers received an account summary from Allianz Life Insurance Company of North America ("Allianz"). The account summary listed a January 17, 2008 partial surrender in the amount of $12,039.32 and a July 3, 2008 loan in the amount of $24,001.25.[7] Id.

In June 2012, Dallas Fleming and Joseph C. Potier met with Lanclos in Fleming's office to discuss the missing Form 1099 for the year 2008 corresponding to the loans and partial surrender listed on the Allianz account summary. Id. at 11. During the meeting, Lanclos provided Fleming and Potier with the 1099 Form from Allianz for the year 2008. Id. This was the first time a 1099 Form for the year 2008 was provided to the Potiers. Id. The 1099 showed a gross distribution of $36,040.57, which matches the sum of the

---

[7]The Potiers additionally learned from the account summary provided by Allianz of an August 8, 2005 loan in the amount of $10,323.95. Because this loan was made prior to Lanclos employment with JBS, and Plaintiffs have made no allegations of any activity took place with regard to this annuity while Lanclos was employed by JBS, the Court finds it is not relevant for purposes of JBS's vicarious liability. See Orgeron on Behalf of Orgeron v. McDonald, 93-1352 (La. 7/5/94), 639 So.2d 224, 226-27.

$12,039.32 partial surrender and the $24,001.25 loan. Id. at 12. According to the Potiers:

> When questioned about the missing . . . 2008 1099's during the June 2014 meeting, Lanclos admitted he mismanaged the Potiers' accounts. Lanclos stated that he would provide the necessary paperwork to file a claim with his errors and omissions insurance policy in order to recoup the lost funds. Lanclos never returned to the meeting. Lanclos did not provide the required documentation. Lanclos did not return subsequent phone calls.

Id.

The Potiers contend Lanclos mismanaged their accounts "through a process called churning," which they define as "the repeated, excessive trading of an account" in order to generate commissions, bonuses and fees. Id. at 21; see also Record Document 14 at ¶ 17. The Potiers contend Lanclos concealed his trading practices through a variety of methods, including the failure to provide 1099s to the Potiers, material misrepresentations with respect to the quality of his investment recommendations, misrepresentation and failure to disclose the existence of early termination fees, surrender fees, up-front bonuses and commissions, adverse tax consequences caused by liquidating the investments prior to maturity, and the similarity of each product purchased and sold. Id. at 21-22; see also Record Document 14 at ¶ 21. The Potiers allege Lanclos "made these misrepresentations and omissions with the intent to defraud Plaintiffs . . . in order to benefit himself and [JBS]." Record Document 14 at ¶ 24. The Potiers continue:

> 25.
>
> Based upon information and belief, at times pertinent herein, Defendant, ROGER DALE LANCLOS signed the names of Plaintiffs . . . on various financial documents and contracts without their consent or knowledge and caused monthly, quarterly, and annual financial reports and other financial documents pertaining to the investments of Plaintiffs . . . to be delivered to his office in order to alter, change, or otherwise prevent Plaintiffs . . . from becoming aware of his investment activities, excessive trading, unsuitable trading, and material misrepresentations.

26.

>    Based upon information and belief, at times pertinent herein, Defendant, ROGER DALE LANCLOS gained access to the home and workplace of Plaintiffs . . . without their consent, knowledge, or under false pretenses to cause monthly, quarterly, and annual financial reports and other financial documents pertaining to the investments of Plaintiffs . . . to be destroyed, altered, or otherwise changed, in order to prevent Plaintiffs . . . from becoming aware of his investment activities, excessive trading, unsuitable trading, and material misrepresentations.

Id. at ¶¶ 25-26. Based upon these alleged facts, the Potiers contend they were delayed in discovering Lanclos' fraudulent trading practices until at least May 2012 when they received the letter from Aviva advising them of the Notice of Levy by the IRS. The Potiers contend they were unable to discover Lanclos' fraudulent activity prior to that time, due to Lanclos' alteration of documents and his false and misleading statements to the Potiers regarding their accounts. Id. at 23-24.

In JBS's underlying motion for summary judgment, it ignored all allegations of fraud set forth in the complaint. See Record Document 90 at 4. In their opposition to that motion, the Potiers argued in light of Lanclos' fraudulent concealment, the peremptive periods set forth in La. R.S. 9:5606(A) were inapplicable by virtue of the fraud exception set forth in La. R.S. 9:5606©. See Record Document 94 at 20-24. In its reply memorandum, JBS again ignored the Potiers' arguments regarding fraud.[8] See Record Document 102. As noted, JBS has not opposed the pending motion for reconsideration, and therefore the Court has no response to date from JBS as to the allegations of fraud

---

[8] The Court notes the underlying ruling also omitted any discussion of the fraud exception to La. R.S. 9:5606. This provides an additional basis for reconsideration. See e.g. Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F.Supp.2d 471, 477 (M.D.La. 2002) ("An allegation that the Court, in making an earlier ruling, failed to consider relevant law certainly clears whatever threshold showing Rule 54(b) might place on a party moving for reconsideration.").

set forth by the Potiers. "When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001). The Potiers have pointed to uncontradicted evidence showing Lanclos intended to defraud them through his misrepresentations and his alterations to and hiding of documents relating to the Potiers' investment accounts. The Potiers have further pointed to uncontradicted evidence that Lanclos' actions caused them damage. Accordingly, the Court finds Plaintiffs have shown there are issues of material fact warranting trial in this matter with regard to the following:

(1) Whether Lanclos committed fraud in the handling of the Potiers' investment accounts;

(2) If the answer to the foregoing question is "yes," because the Potiers' suit was not filed within one year from the day injury or damage was sustained, whether the doctrine of *contra non valentem* prevents the running of prescription in this matter;

(3) If the answer to the foregoing question is "yes," when did prescription begin to run; and

(4) Whether the Potiers' suit was timely filed.[9]

## CONCLUSION

For the reasons set forth above, the Court finds the Potiers have shown there are

---

[9] The Court notes in the pending Motion to Reconsider, Plaintiffs ask the Court to find that their state law claim for vicarious liability is not time barred. Record Document 119-1 at 3. However, Plaintiffs have never filed a motion for summary judgment requesting such relief, and the Court declines to convert their motion for reconsideration into a motion for summary judgment *sua sponte*.

disputed issues of material fact warranting trial with regard to their state law claim of vicarious liability asserted against JBS. Accordingly, the Motion to Reconsider (Record Document 119) is **GRANTED**, and Plaintiffs' claim against JBS for vicarious liability is **REINSTATED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 28th day of December, 2017.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT